UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VFS LEASING CO., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>USASIA CASINO TOURS/ENTERTAINMENT, INC., et al., <br><br>　　　　Defendants. | Case No. 14-cv-02941-JCS <br><br>**REPORT AND RECOMMENDATION REGARDING MOTION FOR DEFAULT JUDGMENT** <br><br>Re: Dkt. No. 13 |

## I.   INTRODUCTION

This case arises from a lease agreement for three tour buses among Plaintiff VFS Leasing Company ("VFS") as lessor, Defendant USASIA Casino Tours/Entertainment, Inc. ("USASIA") as lessee, and Defendant William M. Chu as guarantor of USASIA. VFS brought this action after USASIA defaulted on its payment obligations. Defendants failed to respond to VFS's Complaint or otherwise appear in the case, and the Clerk entered default as to both Defendants on August 25, 2014. Dkt. 10. VFS now moves for entry of default judgment as to both Defendants (the "Motion"). Dkt. 13.

A hearing was held on October 31, 2014. For the reasons discussed below, the undersigned recommends that VFS's Motion be GRANTED in part and DENIED in part. Because Defendants have not consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c), this case will be reassigned to a United States District Judge for further proceedings.

## II.   BACKGROUND

On March 30, 2009, VFS and USASIA entered a Master Lease Agreement under which USASIA would lease vehicles from VFS. Murphy Aff. (Dkt. 13-1) ¶ 2 & Ex. A. The same day, VFS and USASIA executed Schedule 001 to the Master Lease Agreement, providing for a five-

1  year lease of a Volvo tour bus, VIN number 3CET2M62695132073, in exchange for monthly
2  rental payments of $5,363.91. *Id.* ¶¶ 3−4 & Ex. A-1. Chu, who had signed the agreements on
3  behalf of USASIA, also executed a Continuing Guaranty on his own behalf, personally
4  guaranteeing USASIA's present and future obligations to VFS. *Id.* ¶ 27 & Ex. K. VFS and
5  USASIA later executed two additional schedules to the Master Lease Agreement, providing for
6  the lease of Volvo tour buses with VIN numbers 3CET2M62695132074 and
7  3CET2M6229533296 on similar terms. *Id.* ¶¶ 11−12, 19−20 & Exs. A-2, A-3.
8        USASIA defaulted on its obligations under each schedule to the Master Lease Agreement
9  by failing to make payments in August and September of 2011. *Id.* ¶¶ 5, 10, 13, 18, 21, 26 & Exs.
10 B, F, H (payment histories). The Master Lease Agreement provides that, as a remedy in the event
11 of default, VFS may repossess and sell the vehicles and recover the difference between the sale
12 value and the "Stipulated Loss Value," which is defined by a table in each schedule. *Id.* Ex. A
13 § 17; *see also id.* Exs. A-1 through A-3. VFS proceeded to exercise this remedy, and sold the
14 repossessed tour buses on August 13, 2012, March 26, 2012, and January 22, 2014, respectively.
15 *Id.* ¶¶ 8, 16, 24. Each tour bus sold for less than the Stipulated Loss Value. *See id.* ¶¶ 8−9, 16−17,
16 24−25 & Exs. A-1 through A-3.
17       VFS brought this action against USASIA and Chu on June 25, 2014 to recover (1) the
18 difference between the sale price and Stipulated Loss Value of each tour bus; (2) costs associated
19 with the repossession and sale of each tour bus; (3) late fees; (4) prejudgment interest as provided
20 in the Master Lease Agreement; and (5) attorneys' fees and costs of suit. *See id.* ¶¶ 9−10, 17−18,
21 25−26 & Exs. E, G, J (deficiency balance calculations); Compl. at 7−8. Defendants failed to
22 respond to the Complaint or enter appearances, and the Clerk entered default as to both
23 Defendants on August 25, 2014. Dkt. 10. VFS filed its present Motion on September 23, 2014,
24 seeking default judgment awarding all damages except attorneys' fees and costs, which VFS
25 intends to request in a separate post-judgment motion. Mot. at 3. VFS brings its Motion under
26 Rule 55(b)(1) of the Federal Rules of Civil Procedure, which provides that the clerk "must enter
27 judgment" where a "plaintiff's claim is for a sum certain" and defendants are competent and have
28 failed to appear. *Id.*; Fed. R. Civ. P. 55(b)(1).

United States District Court
Northern District of California

### III. ANALYSIS

#### A. Adequacy of Service

Courts must determine the adequacy of service of process on a motion for default judgment. *Bank of the West v. RMA Lumber Inc.*, No. 07-6469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). Here, VFS filed Declarations of Service indicating that Chu was personally served both on his own behalf and as a person authorized to accept service on behalf of USASIA. Dkts. 7, 8. Service was therefore proper, in compliance with Rules 4(e) and 4(h) of the Federal Rules of Civil Procedure.

#### B. Jurisdiction

When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has the affirmative duty to determine whether it has jurisdiction over the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Subject matter jurisdiction is proper under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship—VFS is a citizen of Delaware and North Carolina, and both Defendants are citizens of California. *See* Compl. ¶ 5. Defendants are subject to personal jurisdiction because, among other reasons, both are citizens of California and were served in California. *See Burnham v. Superior Court*, 495 U.S. 604, 610−11, 628 (1990); *ACS Recovery Servs., Inc. v. Kaplan*, No. C 09-01304 JSW, 2010 WL 144816, at *2 (N.D. Cal. Jan. 11, 2010) (citing *Milliken v. Meyer*, 311 U.S. 457, 462−63 (1940)).

#### C. VFS's Claim Is Not for a Sum Certain

VFS brings its Motion pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure, which provides that "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). Although "'the cases discussing the sum certain requirement of Rule 55 are few and far between and rather exiguous in their reasoning,'" the Ninth Circuit has held that a claim is for a sum certain where "no doubt remains as to the amount to which a plaintiff is entitled as a result of the

defendant's default." *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 928−29 (9th Cir. 2004) (quoting *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 n.7 (1st Cir. 2003)). Where a plaintiff provides "loan documents that set forth the specific formulas for determining the amount owed [and] documents setting forth the various amounts necessary for calculating the total amount due," the request meets the criteria of a sum certain. *Id.* at 929.

On the other hand, inconsistencies in a plaintiff's filings may create doubt sufficient to conclude that the request is not for a sum certain. *See id.* Tort claims often do not involve sufficiently certain damages. *E.g.*, *J & J Sports Prods, Inc. v. Saucedo*, No. 5:12-CV-04657-EJD, 2013 WL 2384258, at *2 (N.D. Cal. May 30, 2013). The same is true of claims that involve a party's estimation of damages, *Tolle v. Dempsey*, No. 3:12-cv-00570-HU, 2013 WL 6670263, at *2 (D. Or. Dec. 17, 2013), or a contract that lacks an express formula to calculate damages, *Eurodrip, USA, Inc. v. B & B Drip Irrigation, Inc.*, No. 1:09-cv-00716-AWI-SMS, 2009 WL 2365845, at *5 (E.D. Cal. July 31, 2009) (findings and recommendations of magistrate judge).

Here, VFS's claim is not for a sum certain. First, VFS's submissions are partially inconsistent. *See Franchise Holding*, 375 F.3d at 929. Schedule 001 to the Master Lease Agreement provides that the stipulated loss factor after USASIA made twenty-nine payments would be 70.22 percent, *see* Murphy Aff. Ex. A-1, but VFS's deficiency calculation, which states that USASIA made twenty-nine payments, applies a factor of 69.16 percent. *Id.* Ex. E. More significantly, the Master Lease Agreement also lacks a clear formula to calculate aspects of VFS's damages, in that it bases damages on the "net sales proceeds" of repossessed vehicles, with no explanation of how to determine "net" proceeds. *Id.* Ex. A § 17. Determining what expenses were sufficiently related to the sale to factor into the net proceeds requires more than merely a "computation" as contemplated under Rule 55(b)(1). Because the present Motion does not satisfy Rule 55(b)(1), the undersigned proceeds to analyze the Motion under Rule 55(b)(2). *See J & J Sports*, 2013 WL 2384258, at *2−3; *Tolle*, 2012 WL 6670263, at *2.

  D. **VFS Is Entitled to Default Judgment Under Rule 55(b)(2)**

    1. **Legal Standard**

After default has been entered against a party, a district court may grant an application for

4

default judgment in its discretion. *See* Fed. R. Civ. P. 55(b)(2). If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, it then considers several factors in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471−72 (9th Cir. 1986). In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917−18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c).

### 2. *Eitel* Analysis

In this case, the *Eitel* factors weigh in favor of default judgment. Several factors require minimal analysis. Plaintiff would be prejudiced by denial of default judgment because Plaintiff has no other remedy where Defendants have failed to appear. The sum of money at stake is significant, but it is both warranted under the contracts Defendants signed and less than Defendants' remaining obligations if USASIA had not defaulted on the leases. *See* Murphy Aff. Exs. A-1 through A-3, B, F, H. Although Defendants could conceivably dispute material facts if they were to appear, they have not appeared and thus have not raised any disputes. There is no indication that Defendants' default was due to excusable neglect. Finally, while there is a strong public policy favoring the resolution of disputes on the merits, that is not possible in this case because Defendants have failed to appear. The sufficiency of the complaint and merits of the claim call for more detailed consideration.

### a. Sufficiency of the Complaint

In considering the sufficiency of the complaint on a motion for default judgment, courts look to the Plaintiffs' allegations to determine whether they "'state a claim on which the [plaintiff] may recover.'" *See Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2

5

(N.D. Cal. Feb. 13, 1996) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)) (alteration in original). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8, and must include "sufficient factual mater, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, VFS's Complaint alleges that USASIA entered a series of lease agreements with VFS that required USASIA to make monthly payments, that USASIA ceased making payments before the expiration of the leases, and that VFS at all times fulfilled its obligations under the agreements. Compl. ¶¶ 8−12, 18−21, 27−30. The Complaint attaches and incorporates the relevant agreements. *Id.* Exs. A through A-3. The Complaint also alleges that Chu signed a continuing guaranty of USASIA's obligations under the lease agreements, attaches and incorporates that document, and alleges that VFS entered the lease agreements in reliance on Chu's guaranty. Compl. ¶¶ 35−37. These allegations are sufficient to state claims for breach of contract against USASIA and breach of the guaranty against Chu.

    b. Merits of the Claims

VFS has produced sufficient evidence to support a conclusion that its claims have merit. As a starting point, the allegations of VFS's Complaint are taken as true except as to damages. *TeleVideo*, 826 F.2d 915 at 917−18. Those allegations are further supported by the affidavit of Craig Murphy, a VFS collections manager, which states that USASIA entered the lease agreements and failed to pay as agreed, that Chu guaranteed USASIA's performance, and that VFS fulfilled its obligations. Murphy Aff. ¶¶ 2−6, 11−14, 19−22, 27. Murphy's affidavit and its exhibits also demonstrate that VFS repossessed and sold the tour buses pursuant to Section 17 of the Master Lease Agreement, that VFS incurred costs in doing so, and that the tour buses sold for less than their Stipulated Loss Value. *Id.* ¶¶ 7−9, 15−17, 23−25 & Exs. A-1 through A-3, C−E, G, I, J. As discussed in Part III.D.3, *infra*, VFS is not entitled to all of the damages it seeks, but the undersigned finds that VFS's claims generally have sufficient evidentiary support to demonstrate merit under *Eitel*.

One potential challenge to the merit of VFS's claims is whether the liquidated damages

1   provisions on which they rely are enforceable.  The agreements are governed by North Carolina
2   law.  *Id.* Ex. A § 23.  Under the law of that state, "a sum specified in [a] contract as the measure of
3   recovery in the event of a breach will be enforced if the court determines it to be a provision for
4   liquidated damages, but not enforced if it is determined to be a penalty."  *Majestic Cinema*
5   *Holdings, LLC v. High Point Cinema*, 191 N.C. App. 163, 167 (2008) (quoting *Brenner v. Little*
6   *Red Sch. House, Ltd.*, 302 N.C. 207, 214 (1981)) (internal quotation marks omitted).

> "A stipulated sum is for liquidated damages only (1) where the damages which the parties reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach *or* is reasonably proportionate to the damages which have actually been caused by the breach."

11  *E. Carolina Internal Med., P.A. v. Faidas*, 149 N.C. App. 940, 945−46 (2002) (quoting *Knutton v.*
12  *Cofield*, 273 N.C. 355, 361−62 (1968)).  "Under the fundamental principle of freedom of contract,
13  the parties to a contract have a broad right to stipulate in their agreement the amount of damages
14  recoverable in the event of a breach, and the courts will generally enforce such an agreement."
15  *Seven Seventeen HB Charlotte Corp. v. Shrine Bowl of the Carolinas, Inc.*, 182 N.C. App. 128,
16  130−31 (2007) (citation omitted).

17          In this case, the "net sales proceeds" and "Stipulated Loss Value" provisions of the Master
18  Lease Agreement are enforceable as liquidated damages.  *See* Murphy Aff. Ex. A § 17.  First, "the
19  burden falls on the party seeking to invalidate a liquidated damages provision," and the absent
20  Defendants have of course made no such showing.  *See Seven Seventeen*, 182 N.C. App. at 132.
21  Further, anticipated damages would be difficult to ascertain for a breach of this sort of contract
22  because the parties would need to predict the future value of used tour buses, both at the agreed-
23  upon expiration of the leases and at the time of their early repossession due to USASIA's default.
24  As for the second prong of the test, absent any showing from Defendants, there is no evidence that
25  the Stipulated Loss Factors included in the lease agreements constituted unreasonable estimates of
26  tour bus depreciation at the time the parties entered the agreements.  *See* Murphy Aff. Exs. A-1
27  through A-3.  The same is true of whether those provisions are reasonably proportionate to VFS's
28  actual damages.

Because VFS has provided evidence to support USASIA's breach, Chu's guaranty, and VFS's damages under the formula specified in the agreements, the merits of VFS's claims favor granting default judgment. Thus, taking this factor in conjunction with the others prescribed in *Eitel*, default judgment is appropriate.

### 3. Damages

VFS's present Motion seeks the following damages: (1) the difference between the sale price and Stipulated Loss Value of each tour bus; (2) costs associated with the repossession and sale of each tour bus; (3) late fees; and (4) prejudgment interest as provided in the Master Lease Agreement.[1] *See* Murphy Aff. ¶¶ 9−10, 17−18, 25−26 & Exs. E, G, J (deficiency balance calculations). The undersigned addresses these categories of damages in turn.

#### a. Difference Between Net Sales Proceeds and Stipulated Loss Values

The Master Lease Agreement provides that in the event of USASIA's default, VFS "may take possession of any Vehicles [and] sell, lease, or otherwise dispose of any or all of the Vehicles after it obtains possession." Murphy Aff. Ex. A § 17. "Upon such sale, [USASIA] will pay to [VFS] immediately, as liquidated damages for loss of bargain and not as a penalty, the amount by which the Stipulated Loss Value exceeds the net sales proceeds of such Vehicles in addition to all other amounts due." *Id.*

Murphy states in his affidavits that VFS sold the tour buses for $172,000, $240,000, and $153,600, respectively, for total gross sales proceeds of $565,600. Murphy Aff. ¶¶ 8, 16, 24. Sworn and notarized "deficiency balance calculations" confirm these values. *Id.* Exs. E, G, J.

Determining the "net sales proceeds" requires subtracting costs related to the repossession and sales from the gross proceeds. The deficiency calculations list a number of costs related to the repossession and sale of each tour bus, under the following labels: "Repo," "Clean," "Inspection," "Commission," "Repairs," and "Transportation." *Id.* The undersigned finds that each category listed is reasonably necessary to the process of repossessing and selling the tour buses, and thus properly considered as a factor in determining the net proceeds. For each bus, these costs amount

---

[1] VFS also intends to request attorneys' fees and costs of suit in a post-judgment motion. *See* Mot. at 3.

8

to $40,711.67, $33,500.55, and $9,362.96, respectively, for a total of $83,575.18. Thus, the net proceeds are $131,288.33, $206,499.45, and $159,849.22, for a total of $482,024.82.

The deficiency calculations state that the Stipulated Loss Value of each tour bus was $277,631.75, $280,160.79, and $304,086.26, respectively. *Id.* The undersigned has reviewed the lease agreements and payment records, and confirmed that the deficiency calculations correctly state the stipulated values agreed by the parties based on the number of payments USASIA made before defaulting.[2] *See id.* Exs. A-1 through A-3, B, F, H. The differences for each tour bus are therefore $146,343.42, $40,160.79, and $150,486.26, for a total of $296,278.80. The undersigned recommends that VFS be awarded this value of damages.

### b. Late Fees

VFS's deficiency calculations also list "Late Charges" as additions to VFS's damages. *See id.* These charges come to $8,082.40, $3,301.51, and $9,209.39 for each bus respectively, for a total of $20,593.30. *Id.* Although the Master Lease Agreement provides for a five percent charge on payments more than fifteen days overdue, *id.* Ex. A § 6, VFS's Motion and supporting documents do not itemize or explain how these charges were calculated. The undersigned therefore recommends that these charges be excluded from VFS's damages. Plaintiff's counsel stated at the October 31 hearing that, in the interest of efficiency, Plaintiff would not oppose that exclusion.

### c. Prejudgment Interest

The Master Lease Agreement states that except for late monthly payments, "[a]ll other monetary obligations due and not paid when due will bear interest at the lesser of 18% per annum or the maximum rate allowed by law." *Id.* Ex. A § 6. The damages VFS seeks here are not

---

[2] The deficiency calculation for Schedule 001 lists USASIA as having made twenty-nine payments, but lists the Stipulated Loss Factor as 69.16 percent. Murphy Aff. Ex. E. This conflicts with Schedule 001, which provides that the Stipulated Loss Factor after twenty-nine payments is 70.22 percent, and after thirty payments it is 69.19 percent. *Id.* Ex. A-1. Payment records for Schedule 001 indicate that USASIA in fact made the equivalent of thirty scheduled payments before defaulting. *See id.* Ex. B (showing payments through August 1, 2011); *id.* Ex. A-1 (identifying August 1, 2011 as the thirtieth scheduled payment). The deficiency calculation therefore states the wrong number of payments but uses the correct factor to calculate the Stipulated Loss Value. *See id.* Ex. E.

1    monthly payments, and North Carolina law allows the parties to a contract to set any rate of

2    interest for debts that exceed $25,000.  *See* N.C. Stat. § 24-1.1(a)(1).  The undersigned therefore

3    finds that VFS is entitled to eighteen percent annual interest on the allowable damages discussed

4    above.

5          The Murphy Affidavit calculates interest related to each Schedule from the date of

6    USASIA's default.  *See* Murphy Aff. ¶¶ 10, 18, 26.  The Master Lease Agreement, however,

7    provides that USASIA must pay the difference between net sale proceeds and the Stipulated Loss

8    Value "immediately" "[u]pon such sale."  *Id.* Ex. A § 17.  The undersigned therefore finds that the

9    date of sale for each bus is the date on which the damages at issue became due, and thus the

10   appropriate starting point to calculate interest.

11         For the first tour bus, VFS has shown damages of $105,631.75 based on the difference

12   between gross sale price and Stipulated Loss Value, and $40,711.67 based on costs related

13   repossession and sale, for a total of $146,343.42.  At eighteen percent annual simple interest, VFS

14   is entitled to $72.17 in interest per day.[3]  This tour bus was sold on August 13, 2012, *see* Murphy

15   Aff. ¶ 8, which is 809 days before the date of this Report and Recommendation.  If judgment were

16   entered today, VFS would be entitled to $58,385.01 in interest on damages related to the first tour

17   bus.

18         Damages related to the second tour bus total to $73,661.34.  Eighteen percent annual

19   interest is equivalent to $36.33 per day.  The second bus was sold on March 26, 2012, *see id* ¶ 16,

20   949 days before this Report and Recommendation.  If judgment were entered today, VFS is would

21   be entitled to $34,473.51 in interest on damages related to the second tour bus.

22         Damages related to the third tour bus total to $159,849.22.  Eighteen percent annual

23   interest is equivalent to $78.83 per day.  The third bus was sold on January 22, 2014, *see id* ¶ 24,

24   282 days before this Report and Recommendation.  If judgment were entered today, VFS would

25   be entitled to $22,229.99 in interest on damages related to the third tour bus.

26         In sum, if judgment were entered today, VFS would be able to recover $115,088.51 in

---

[3] $(0.18 / 365) \times \$146{,}343.42 = \$72.17$.  Although values stated in this Report and Recommendation are rounded to the nearest cent, all calculations are based on unrounded values.

prejudgment interest pursuant to section 6 of the Master Lease Agreement. VFS is entitled to $187.33 in interest for each additional day before the entry of judgment.

### d. Total Damages

As discussed above, VFS has demonstrated that it is entitled to $296,278.80 for the difference between the gross sales proceeds and Stipulated Loss Value of the three tour buses, $83,575.18 for costs related to repossession and sale that can be factored into the net sales proceeds, and $115,088.51 for contractual prejudgment interest through the date of this Report and Recommendation. In total, VFS should recover $498,127.02, plus $187.33 for each additional day before the entry of judgment.

## IV. CONCLUSION

For the reasons discussed above, the undersigned recommends that VFS's Motion be GRANTED in part, and that judgment be entered in favor of VFS. Any objection to these recommendations must be filed no later than November 14, 2014. This case will be transferred to a United States District Judge for all further proceedings.

Dated: October 31, 2014

JOSEPH C. SPERO
United States Magistrate Judge